THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY LUCAS, JR., Defendant-Appellant.

Third District   Nos. 76-449, 77-59 cons.

Opinion filed October 24, 1977.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is a consolidated appeal from two judgments of the Circuit Court of Knox County, each of which involved and were against the defendant, Jerry Lucas, Jr.

In case No. 76-449 the defendant appeals from a judgment revoking his probation and from the sentence imposed following the revocation which was that he serve a term of imprisonment of not less than 3 nor more than 9 years.

In case No. 77-59 the defendant appeals from a judgment which denied his petition for post conviction relief on the grounds that his admission to the probation violation was coerced.

A detailed recitation of the facts concerning case No. 76-449 is as follows. On December 11, 1975, the defendant was charged by information with having committed the offense of forgery. On March 22, 1976, the defendant pled guilty to this charge and after the filing of a presentence report and hearing thereon, the trial court sentenced him to a five-year term of probation. A specific condition of the defendant's probation was that he enroll in and complete a drug rehabilitation program at the Gateway House Foundation.

On June 29, 1976, the State filed a petition which prayed for the revocation of the defendant's probation. The petition alleged several violations of probation, the most pertinent being that the defendant had walked away from the Gateway House program after participating in it for approximately two weeks. The Gateway program requires that a participant remain in it for a period of 18 to 24 months.

On July 26, 1976, the defendant appeared before Judge U. S. Collins for a hearing on the State's petition to revoke his probation. We note that it was Judge Collins who had sentenced him to the term of probation which the State was seeking to revoke. We further note from the record that the defendant had appeared in court before a different judge on July 15, 1976, and specifically requested Judge Collins to hear the revocation proceedings and in fact claimed it to be his right to appear before Judge Collins. The trial court granted this request. The public defender representing the defendant indicated that the defendant wished to waive his right to an evidentiary hearing and would proceed on an offer of proof by the State. After the trial court had admonished the defendant as to his rights and ascertained that he knowingly waived his right to present evidence, the State was permitted to proceed on an offer of proof.

The State offered to prove that on May 11, 1976, Diane Schwartz of the Gateway House mailed a letter which informed the court and the State's Attorney that the defendant had left the drug rehabilitation program on May 7, 1976, without the advice and consent of the Gateway House staff. When asked if this statement was true the defendant replied in the negative and asserted that he had gone to the staff at the Gateway House and informed them that their program was not what they had represented it to be and asked if he could leave, after which the staff provided him with bus fare, his personal belongings, and escorted him to the door so

that he could return to Galesburg. The defendant further asserted that the Gateway House authorities represented to him that they would contact his probation officer and then he would be contacted:

A further recital of facts as gleaned from the record will be set forth as they become pertinent to the issue present in this appeal.

The issue presented to this court for determination is the defendant's contention that the trial court committed error in accepting his admission of a probation violation when he refused to admit culpability.

The defendant in support of his contention cites the case of *North Carolina v. Alford* (1970), 400 U. S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160. In *Alford* our United States Supreme Court held that there is no constitutional error in accepting a guilty plea containing a protestation of innocence when the defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of guilt.

In spite of this specific holding the defendant nevertheless contends that the courts cannot simply presume that pleas coupled with claims of innocence represent a voluntary and intelligent choice. The defendant supports this contention on the basis of language found in a footnote in the case of *Alford* and which is as follows:

"Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea * * *; and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." *North Carolina v. Alford* (1970), 400 U. S. 25, 38 n. 10, 27 L. Ed. 2d 162, 171 n. 10, 91 S. Ct. 160.

■■ The defendant strongly stresses the language in the cited footnote to the effect that the trial judge taking the plea should inquire into and seek to resolve the conflict between the waiver of trial and the claim of innocence. We quarrel not with this argument of the defendant since we recognize it to be the law; however, in the instant case the record supports a finding that the trial judge was faced with no difficulty in reconciling the defendant's waiver of an evidentiary hearing at the probation revocation proceedings and his denial of culpability.

We reach this conclusion because as we have previously stated, the same judge who granted the defendant probation was at the defendant's request the judge who presided at the revocation proceedings. The record discloses that when the defendant was granted probation the trial court conducted a presentence hearing and had the benefit of a presentence report. This report discloses that the defendant was no

stranger to the courts in that commencing in 1958 and until the time he was granted probation by Judge Collins the defendant had been adjudged guilty of 11 misdemeanors, 7 felonies, and had on 5 occasions been incarcerated in either the county jail, the state penal institution at Vandalia, or the federal penitentiary. The defendant had twice been granted probation and once had received parole. He had previously been found to be a violator of both probation and parole. The record further discloses that prior to the presentencing hearing the defendant, while incarcerated in the Knox County jail, made contact with personnel of the Gateway House and made inquiries concerning their drug rehabilitation program and that approximately ten days prior to the hearing Mr. Lewis Jones of the Gateway House travelled from Chicago to Galesburg for the purpose of discussing the program with the defendant. During the hearing the defendant testified that he had been the user of various drugs, to-wit, marijuana, acid, speed and heroin, for a period of 15 years. The defendant expressed a desire that he be granted probation and that further he be permitted to participate in the Gateway House drug rehabilitation program. The defendant testified to the effect that it was his addiction to drug usage that caused him to repeatedly violate the law. During the presentencing hearing the following colloquy ensued between the defendant and his counsel:

"Q. Mr. Lucas, if the court would place you on an extended period of probation under a strict condition that you engage in and, in fact, complete through completion [sic] the program that Mr. Jones outlined, would you, in fact, do so?

A. Yes, I would.

Q. Would you be willing to abide by such a condition of probation if, in fact, one were imposed by this court?

A. Yes, I would."

At the conclusion of the presentencing hearing and after the defendant had waived a hearing in aggravation and mitigation the court made the following statement:

"It is the sentence of this court that the defendant, Jerry B. Lucas, Jr., be placed on probation for a period of 5 years. Besides the usual terms and conditions of probation he is to complete and be enrolled in the Gateway program * * *.

However, Mr. Lucas, I want to say to you that should you violate any of the terms and conditions of this order of probation of which you will receive a copy that a petition for revocation of your probation will undoubtedly be immediately filed in this court * * *."

Later in the sentencing the court asked:

"THE COURT: And you know how serious it is for you to make

every effort and exert every ounce of your energy to complete this program and make yourself useful to society?

DEFENDANT: Yes, sir."

As we have previously stated, Judge Collins, who sentenced the defendant, also presided at the revocation of probation hearing. It was during this hearing that the defendant waived his right to an evidentiary hearing but denied culpability as to violation of the terms of his probation requiring Gateway House treatment. The defendant contradicted the State's offer of proof by stating that he left the Gateway House program with the consent and assistance of the staff of Gateway House.

Judge Collins during the revocation proceeding made the following observation:

"Well personally I think he knew what was in the report. We went over it pretty carefully at the time he received probation because there was doubt in my mind whether he should get probation or not. He had a representative from Gateway at that hearing who did testify."

Judge Collins in the quotation which we have set forth used the word "report" but it is clear from the record read in its entirety that he was referring to the order of probation containing the conditions of probation. The defendant also stated that he did not receive a copy of the probation order; however, in the light of the facts in this case we do not deem this omission, if it did occur, to be of any consequence. The defendant was certainly no stranger to sentences of probation and it is clear that the trial judge specifically and meticulously advised the defendant that the primary condition of his sentence of probation was that he participate in and complete the Gateway House drug rehabilitation program.

■■  We believe that it is clear from the record that the trial court met the test set forth in the case of *North Carolina v. Alford* (1970), 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160. The trial court resolved the conflict between the defendant's waiver of an evidentiary hearing and his denial of culpability by determining that the defendant was not telling the truth. An examination of the record fully supports such a determination.

As to case No. 77-59 which pertains to the denial of the defendant's petition for post-conviction relief the pertinent facts are as follows. On November 12, 1976, the defendant filed *pro se* a petition for post-conviction relief in which he alleged that his admission to the probation violation was coerced by the assistant state's attorney's threat to file a felony charge against his fiancee if he contested the evidence of violation. The trial court, Judge Collins again presiding, appointed the public defender to represent the defendant on the hearing of the petition, which was set for December 2, 1976. During the hearing the defendant was present in court and testified that on July 26, 1976, the day he admitted his

probation violation, he was twice visited by an assistant state's attorney at the Knox County jail and that he was informed that if he wanted his fiancee to go free he was to accept a probation violation finding on the evidence presented by the State. The defendant further testified to the effect that if he did not cooperate his fiancee would be charged with aiding and abetting a fugitive.

There was one Rose Franklin incarcerated in the Knox County jail on July 26, 1976, and she was released on that date.

The record further discloses that the defendant testified that one prisoner overheard the alleged threats of the assistant state's attorney and that prior to his probation revocation hearing he related the alleged threats to a preacher and his wife, who he was granted permission to see. Counsel for the defendant stated that these individuals had not been subpoenaed to appear at the post-conviction hearing nor did he have any plans to call them.

The defendant's testimony also contained statements as to threats that he would receive a sentence of not less than 3 nor more than 9 years rather than an agreed upon negotiated sentence of not less than 1 nor more than 3 years. The defendant in fact received a sentence of probation.

No useful purpose would be served by setting forth the defendant's testimony verbatim. We do, however, make the observation that large portions of it were confusing to the court, the prosecutor and his own attorney.

After hearing arguments on the State's motion to deny post-conviction relief, the trial court found that the motion was well taken and as we have previously stated, denied the defendant's petition for post-conviction relief.

The issue presented in this appeal for determination is the defendant's contention that the trial court erred in denying him post-conviction relief in view of the fact that the evidence presented was uncontested. We have framed the issue as presented to us by the defendant and at the outset we do not agree that the evidence by him, to-wit, his testimony, was uncontested. It is true that the State did not present any witnesses but the defendant was subjected to cross examination and final argument by the State.

The law is well settled that the burden is on the defendant in a post-conviction hearing to show that he was deprived of a substantial right. (See *People v. Thomas* (1972), 51 Ill. 2d 39, 380 N.E.2d 433.) The defendant testified that the alleged threats made to him by an assistant state's attorney were overheard by another prisoner, Virgil Munsell. Munsell was a client of defendant's counsel. The defendant further related that he informed a preacher and his wife of the alleged threats and that these individuals worked at the Rescue Mission. We deem it

significant in determining whether or not the defendant met the burden of proof required that he not only did not subpoena any of these individuals, but in addition his counsel informed the trial court that he had no plans to do so.

The defendant has in our opinion placed himself in an incongruous position. In this appeal he claims that he was coerced into waiving an evidentiary hearing and making an admission of guilt in his probation revocation hearing, yet he appealed the judgment revoking his probation on the grounds that his admission of probation violation should not have been accepted by the trial court because he denied any culpability. It is apparent to this court that the defendant is possessed of two completely different coats and he attempts to don one or the other of them as the occasion demands.

■■■ We deem it noteworthy that at the post-conviction proceedings the presiding judge was again Judge Collins, the same jurist who had granted probation and subsequently at the defendant's request presided at the revocation proceedings. Judge Collins was not required to divorce himself from the knowledge he had concerning the defendant. (See *People v. Davis* (1976), 65 Ill. 2d 157, 357 N.E.2d 792.) In a post-conviction hearing the credibility of testimony is a matter for the trial judge to determine and his determination and finding will be upheld unless something appears to show the same to be manifestly erroneous. (See *People v. Thomas* (1972), 51 Ill. 2d 39, 280 N.E.2d 433.) In the instant case the trial judge was no stranger to the defendant and the machinations that he had utilized in previous hearings. The trial judge was in the position to determine the credibility of the defendant's testimony by reviewing in toto the proceedings in which the defendant was granted probation, the proceedings in which probation was revoked and the defendant's testimony in the instant case, and he determined that the defendant's testimony as to coercion was not credible. In examining the record we fail to find that the trial judge's determination was manifestly erroneous. See *People v. Thomas* (1972), 51 Ill. 2d 39, 280 N.E.2d 433.

The defendant calls attention to a portion of the trial court's ruling where the judge stated:

"If we allow such situations as this to continue the courts will never resolve any of these questions."

It is the defendant's contention that this language demonstrates that the trial court based its ruling upon policy considerations rather than legal considerations. If the sentence referred to was standing alone we would agree with the defendant; however, it is not standing alone but has been taken out of context, for following the complained of observation by the trial court we find it clearly stated that the relief sought by the defendant was denied because he failed to meet the requisite burden of proof.

For the reasons set forth the judgment of the Circuit Court of Knox County and the sentence imposed thereon in case No. 76-449 is affirmed and the judgment in case No. 77-59 entered by the same court is also affirmed.

Affirmed.

STENGEL, P. J., and ALLOY, J., concur.